Good morning, Your Honors. I'm Jeffrey Baird. May it please the Court, I'm representing Carla Morgan in this social security disability case. The most important evidence in this case came from Dr. Petrasek, who did a mental evaluation of the claimant. Dr. Petrasek found on examination poor insight, poor judgment, constricted affect, took a history, and concluded she's done diagnosed with anxiety disorder, with depressive features, a pain disorder, and also an adjustment disorder. Based on these findings, Dr. Petrasek limited the claimant to optimally simple, repetitive tasks, specifically one- and two-step instruction-type jobs. The state agency reviewing physician Dr. Dalton went through that and agreed, simple, repetitive tasks, and noted one- to two-step tasks. This case was decided at step four, plaintiff's past work. The ALJ found the plaintiff could still do her past work as a secretary. At step five, given the ALJ's RFC finding, there would be automatic pay as of age 55, which occurred in the middle of the period at issue here. So she'd have to be paid if it goes to step five. The ALJ ruled against her at step four. At step four, the rulings define two different ways to look at past work. The first is as actually performed. That would be based on the plaintiff's description in a vocational report. That's the citation the ALJ made, as actually performed, citing the plaintiff's own vocational report. The other way is using the dictionary of occupational titles, and that would be something that the ALJ could take notice of. He did not take notice of it here. But she would win either way, given Dr. Petrasek's opinion. The main way at stake here is the as actually performed. Plaintiff described secretary as requiring her to apply technical knowledge, write reports, use special tools, all in addition to other tasks. Those tasks would be beyond simple repetitive tasks. So as she described the job of secretary, it would be beyond Dr. Petrasek's limitations. Was that error harmless regarding the ALJ's evaluation of Ms. Morgan's mental health symptoms? It seems that it could be determined that Ms. Morgan could do her past work as a secretary, despite the mild sort of mental difficulties that Dr. Petrasek identified. No, Dr. Petrasek said optimal simple repetitive tasks, and then she discussed one and two step, one and two step tasks. So she didn't say she could do difficult sustained throughout a day. She said optimally simple repetitive tasks. Is your point that the ALJ did not include the doctor's report or assessment in the RFC assessment? Correct, it's missing. And so is Dr. Dalton's, because Dr. Dalton also said simple repetitive tasks and also discussed one and two step tasks. So they both were talking about that as the relevant limitation. They never said she can sustain more difficult work than that. The word was optimal simple repetitive tasks. She had had carpal tunnel. Yeah, that's another angle. I think it had carpal tunnel surgery. True. And there's some, I guess, Dr. I forget who the doctors are. Yeah, Dr. Vu is their reviewing physician. And he said, well, there was pretty good results, he said, but, you know... Six hours a day, five hours to six hours using the hands. But she testified, if you look at the work of a secretary that she was actually performing, she needed to  Correct. All the time. It's called constant, not frequent. Constant time, not frequently. Right. And that is the report the ALJ cited, the vocational report of plaintiff's job as actually performed. And the ALJ used the term of art as actually performed under SSR 8261. Help me with that, because you just said something I'm interested in. Your client said, I have to finger, if you will, eight hours a day. But the ALJ didn't think your client was credible on other grounds. I don't know whether he found her incredible on this ground. But tell me about the report that says you have to do it eight hours a day. That was the claimant's own report of as actually performed, her vocational report. Her All other basis for the eight hours a day conclusion except her testimony. And the ALJ accepted that testimony and cited that vocational report and used the term of art. Right. And I'm trying to figure out whether his other finding that your client wasn't credible somehow diminishes his acceptance of her statements in that report. Well, how could it? Or is his credibility, lack of credibility and determination limited to her statements, her inability to find work, if you will? The ALJ cited the vocational report as the basis for making the determination. I thought he discredited basically her pain testimony. He discredited her very broadly. He didn't discredit numbness in the fingers, swelling hands. He discredited the pain, the constant pain. Right. That's what I'm trying to figure out here. We have this report which seems to say eight hours a day and the ALJ accepts it. And then we have your client who says I can't work eight hours a day. And some doctors support that and the ALJ doesn't discuss them. So I'm trying to figure out what the import of his lack of credibility finding is. Is it just a lack of credibility finding about pain or is it a lack of credibility about more than that? Well, we can infer the ALJ did accept her report about her past work as credible. He cited it. He found that was the way to determine what her past work was. But let's talk about the pain. I did have some questions. Yeah. I guess to what, when the ALJ was considering, you know, her credibility, it looked at her drug addiction. True. And just trying to figure out to what extent an ALJ can consider a claimant's drug addiction in determining credibility. Is there a meaningful difference between considering the fact of addiction and considering behavior motivated by the addiction? Well, if the ALJ was considering the Vicodin abuse, which is we have a pattern of that, he needed to do a Bustamante analysis, go through all five steps of the sequence first, including the Vicodin abuse, and then separating out the Vicodin abuse the second time around. He didn't do that. He simply discredited her for the drug. Bustamante doesn't apply to credibility in terms of abuse. Well, before he can use her drug abuse as a credibility factor. Right. Well, no, to deny benefits. Right. To deny her eligibility. Right. Bustamante doesn't deal with whether or not the ALJ can consider, you know, excessively abusing drugs or getting, you know, prescriptions or what she did here for purposes of judging her credibility. Sort of as a character assessment, you mean? Yeah. Yeah, he can assess her character that way. Right. That's true. But if he's going to deny her on the basis of her drug or alcohol addiction, then he has to go through a Bustamante analysis. Correct. That's right. Did he do that here? Well, he seemed to try to do it both ways. He kept pointing to her Vicodin abuse as though that would somehow diminish what her impairments were or diminish what her limitations were. Did you challenge the ALJ's finding that Ms. Morgan was not credible because she was depressed or failed to seek treatment for depression? Right. There's a hint in the record that she couldn't always afford. It was in Dr. Forster's notes. She couldn't always afford special treatment. But did you challenge that? I did not. Okay. Would that have been enough to sustain the credibility determination? Well, under this court's Brown-Hunter decision, how would that affect numbness in the fingers? I mean, that's pervasive in the record. She's being prescribed Neurontin for the finger numbness. That's a nerve palliative. So he did establish poor character. And then from that, a total discrediting, I guess. But it didn't deal with the particular allegations that would be relevant to performing work as a secretary. I did want to make a DOT, Dictionary of Occupational Titles, argument just briefly. The ALJ didn't rely on the DOT. He didn't cite the DOT at all. That would be as generally performed past relevant work. Under this court's recent holding in Zavalin v. Colvin, reasoning level three job is beyond simple repetitive tasks. In the DOT, there are two possible secretary jobs that would fit with what the claimant said. One is called secretary, and the other is called clerk typist. Secretary is reasoning level R4, well above simple repetitive tasks. And clerk typist is reasoning level R3, also above simple repetitive tasks. So she would win if it was remanded for investigation of the DOT as generally performed. Oh, yeah. I want to get to your question of your position that we should rule in her favor rather than remand. Yes. Tell me why we should do that. There's no reason to remand now. We know that she's going to meet her step four burden. As she described it, handling eight hours a day, filling out reports. That's beyond Dr. Vu's six hours a day handling, and it's beyond the other. Well, is it beyond the other? There's two State courts. Yeah. And we seem to conflict with each other. They did, yes. And the ALJ says, I accept them all. Yeah. And so I think at this point you're entitled to argue that having accepted the lesser of the two, his order is not appropriate. And I do make that argument, but there's a sub. Yeah, but why? There's also a sub. When he goes back, why can't he say, oh, yeah, you're right, I accept the other one? The earlier one was before the carpal tunnel surgeries, so it can't have been accurate. The earlier State agency that said unlimited handling had to be false because there was carpal tunnel surgery soon thereafter. So the doctors who did the surgery found severe carpal tunnel on the left and right. You also say correctly that the ALJ didn't determine in this case whether or not she could perform work in the national economy, but whether she could perform her specific job. Right. But why shouldn't he have the ability to consider that? She falls under the grids. At age 55, limited to light work without any specific skills identified, she would be found automatically disabled under the medical vocational guidelines. But this is a new fact that wasn't in front of the ALJ, right? Well, the ALJ knew that. That's in the law. That's in the regulation. How old was she when she was in front of the ALJ? She turned 55 in 2008. The ALJ made its decision in 2010. Okay. I just wasn't clear when the age, when she aged up. She aged up during the middle of the period at issue, and the ALJ was well aware of her age 55. I'd like to say a few words. Yes. So you're saying because she's turned 55, that would be the main reason we do not need to remand? Just pay, because it would go to Step 5. If you were to remand for a vocational expert to look at Step 4, it's going to find R3 is greater than simple repetitive tasks. Okay. Thank you. Okay. We have two minutes for rebuttal. Yes. Thank you. May it please the Court, Laura Brott on behalf of the government. Can you just address that last point? I can move the mic down just a bit. Sure. Made right now. I know you have other probably arguments to make, but just if we get to that point, would it be a remand or would it be a grant of benefits? It would definitely be a remand to reevaluate the evidence. And this is sort of part and parcel with some of my other arguments. So let me first just say, in response to your direct question, that it is in very rare circumstances where the court would remand for payment. Just as a threshold matter to preserve the objection, the agency disagrees with the credit as true doctrine, which you probably know from. The agency what? The credit as true doctrine, which is what a remand for payment would be based on, which you probably know because we argue that all the time. Yes. We talk a footnote all the time. Right. So I want to, you know, put on record that we do think that it's contrary to. Well noted. Okay. But as it is, when it is applied, it's in very exceptional cases, and it wouldn't apply here. It's only when the record is completely developed and a decision of disability is clear on the face of the evidence. Here, that's definitely not the case. And I mean, claimant in the briefing and now has been arguing that there are issues the court should look at. And this Step 4 versus Step 5, it doesn't, it definitely does not dictate a remand for payment. Because what, there's a point that I think we're all missing here. Even if the ALJ, even if the claimant is right, and as they're arguing, that should have been, should have had accepted what the doctors are saying about the mental limitations and the physical limitations, this claimant would still be disabled at Step 4. And that's because this is an either or standard. If the claimant could perform the past relevant work, either as she did it, or as ordinarily performed in the national economy, she will be not disabled at Step 4 under the agency's rules and regulations. Then she would have to go to Step 5. No. No, she'd never get to Step 5. She'd never get to Step 5. Yeah, but you do agree the ALJ never considered whether she could perform this task in the national economy. He just looked at her job, previous job. Well, I think it's unclear. Then she should go back. Then she should go back. No, no, no, it shouldn't. It shouldn't, because at most that's a harmless error. I don't think that's harmless. Her job seemed harder than the national. I've had lots of terrific secretarial help over the years, and I can't remember that they moved their fingers continuously for eight hours a day. Sometimes they stood up and talked. Her job seemed harder than the national economy to me. Well, it certainly did the way she described it, but if you look at the way she described it, and, you know, you made a point about her credibility. If you look at the way she described it, it doesn't make sense, because if you look at the full report, she's saying that she walked eight hours a day, stood eight hours a day, typed eight hours a day, sat eight hours a day, and it's not possible. Where is the evidence in this record about what the job requires in the national economy? The ALJ actually included an exhibit to the report. It's a medical vocational form that indicates that she would be not disabled according to the DOT description of her secretary, and it lists the number. Well, but he accepted Dr. Vu's testimony or analysis, among others, which said, what, one-third to two-thirds? Frequent, right. Frequent, which is one-third to two-thirds of the day, as it translates in your regs, right? That's right. So at maximum six hours. At maximum six hours, at minimum, I don't know, 2.23. Would those qualify in the national economy? Yes. Even at the bottom level? Well, it's irrelevant at the bottom level, because it's a range. Frequent means one-third to two-thirds. Right. So. So someone who can do frequent fingering can, is qualified to be a secretary, qualified for this job in the national economy. That's correct. And did the ALJ make that finding? Well. You're telling us he'd have to if we remanded. So you're really telling us that we should decide the case on the basis that the ALJ didn't. No, I really don't believe I'm telling you that, because. You said he did make the finding? So the face of the opinion says. I mean, the fact that you don't say yes gives me pause. I, well. That gives me further pause. I guess what I'm arguing here is harmless error. So I think that, I think that. I'm not sure, I mean, what's your authority that that would be harmless error? Because under, because even if, okay. Do you have a case? Yes, I have social security ruling 8162. And it says, let me just pull it up for a second. It says, if the claimant cannot perform the functional demands and or job duties required in her particular former job, but can perform them as generally required by employers in similar jobs throughout the economy, the claimant should be found not disabled. Sure. We all agree with that. Right. The difficulty is that the trial, the trier of fact, the ALJ, didn't make the second finding. You're asking us to make it for him because you say the evidence in the record compels that finding, right? Well, it does compel that finding. Okay. But do we have the ability to make that, that's a different harmless error analysis than saying the judge made alternative findings and one works even if the other one was wrong. Here you're saying the judge didn't make alternative findings, but he should have. And if he had, we'd have harmless error. That sounds to me like we ought to send it back to him. So. I'd like to back up if we can, unless you have something else to respond to. That's my difficulty. So can you respond to that? Do we ever have a harmless error thing that says, well, we can act as the finder of fact looking at the record and we're sure that the trial judge would have had to make this finding had he ever gotten to it. Well, I think that you can, that the face of the opinion doesn't lay out specifically each step of the analysis, but I don't think it means that the analysis wasn't done. And. Does he ever mention the words national economy? No. But he does cite to the support for the determination that she could do it in the national economy. I'm sorry, he doesn't cite to it. He attaches it in the exhibit, which is 9E. And it's in the record, I believe it's AR 188. 188? Yeah. Let me, if I can ask you, to what extent can ALJ consider, this is kind of the questions I was asking or posing counsel, claim it's drug addiction in determining credibility? That absolutely can be considered. And I think. I thought we had case law that said it can't. That's only when, so I believe you're referring to case law that says when a claimant is taking medication as prescribed, with opiate medication or pain medication as prescribed, it shouldn't be an adverse credibility factor. Right. But that's not the case here. This claimant. Well, I think it seems like it should have given the ALJ pause that Ms. Morgan's own doctor continued to prescribe, I think, her painkillers, even after he suspected that she was an addict. Well, he did, but just, he did. And I think, you know, I'm not a medical doctor, but I think in the process of weaning, you can see in the record that he's encouraging her to stop and that she's not taking the medications he's prescribing for her pain, such as nortriptyline, correctly, and she's not following the treatment as prescribed. And significantly in this case, even if it were independent from the drug addiction, she has shown in that context that she is, says, engaged in false statements. She was jailed for altering a prescription before this case started. There's also evidence in the record that she tried and succeeded in filling a prescription more frequently than her doctor prescribed, and that she was let go from a job because she had a friend call in a prescription for her. So these are the types of facts that are, that ALJ is certainly entitled to consider, notwithstanding the fact that she was prescribed Vicodin. When the doctor knew that she had, you know, or suspected that she had an addiction, it just seems like that idea that her descriptions of her symptoms were credible, even if she had also developed an addiction. And it seems to be a little counterintuitive. So I'm just trying to figure out how we can sustain the ALJ's credibility findings. You know, is there another ground? Yes, there are. But before, there are other grounds, such as her daily activities, and just the absence of objective data in the record. But I do want to address what you just said. I think that the fact that she was prescribed these opiates and that she wanted to keep taking the medication because of her addiction shows that she had reason to exaggerate her pain, because the doctor's encouraging her to take medication for the pain, and she's saying it's not working, the nortriptyline isn't working, I need the opiates. But the ALJ didn't say that. Well, the ALJ did reference the drug addiction in the inconsistent statements. Right, and I'm just not sure if that's allowable. But I'm seeking your best to inform me, educate me on that. I mean, isn't it true that he's not supposed to rely on that? No, I think the ALJ is entitled to rely on that, because it shows that she may be exaggerating her pain, and also because it's a false statement, based on the false statements that she made in connection with the drug addiction. Because you're saying so there's something in addition than the addiction, because I think the addiction alone is not a permissible ground for an adverse credibility determination. But in this case do you agree with that? If she were taking her medication as prescribed and she weren't. No, no, no, I'm talking about the facts here, but do you agree that that's the law here? I thought the commissioner recently established that an addiction alone is not a permissible ground for an adverse credibility. An addiction alone, that's correct. Okay, so you're saying it's not addiction alone here. Can you just point to me where the ALJ, and you may have it, I was just concerned that he was relying primarily or totally on her addiction in making the adverse credibility finding, or that it was so intertwined with what he did state that it affected his adverse credibility determination. On page 23, the claimant lost her last job, not because of her physical condition, but because she was jailed for altering a prescription in order to obtain Vicodin. The claimant also alleged to her physician that her pills were stolen from her. And if you look at the record, it doesn't establish whether or not that was true, but you can read that the physician was curious about whether that was truthful. Let me ask you just one other, a couple other questions along this line. One, the adverse credibility finding really only goes to her pain. He was rejecting her pain testimony. That's right. And he said she had some pain, but not as much as she said. That's right. That's right. My next question is, you made reference to the ALJ when he says that he attached the medical vocational decision guide at 188 of the administrative record. Right. And if you go there, and you're right, you go to paragraph 3, it says able to perform past relevant work, and the box is checked. Right. And below that, it says as described, that box is checked. They're both checked. And the other one, per DOT, that box is checked. That's right. When he gives his decision, though, he only seems to be referencing as described. That's correct, as it's written there. But my argument is that I think we can take from the fact that he included this exhibit, that it's in the file, that the agency looked at both prongs. We're supposed to look at his decision as it's written, right? If you get back to core ad law. Well, I think the fact that we're supposed to look at his decision. I believe the fact that he addresses the issue, and also the fact that the source he cites doesn't actually establish eight hours of fingering a day when you read the entire paper. That it's not completely clear which he was relying on. All right. Thank you. All right, you had two minutes for rebuttal, and that's it. Real quickly, the ALJ cited exhibit 2E and 6E on the past relevant work. That's a citation where the box for DOT was blank, and the only box that was marked was as actually performed. So that's what he cited in his decision, although I concede there's other parts of the record that are marked differently. More important point on the past relevant work, if you were going to rely on the DOT, is that the mental impairment imposes a limitation to simple repetitive tasks. The citation in the exhibit that my opponent relies on is to a job that is reasoning level three. That is greater than simple repetitive tasks under this court's decision in Zavalin v. Colvin. That was just a few months ago. So even if you were to agree to use the DOT, although the ALJ didn't say that in the decision, the claimant should still win under the DOT. And that means she would satisfy step four if it were remanded, and if it were remanded, she'd have to be paid at age 55. Thank you.
judges: Paez, Murguia, Hurwitz